**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD L. SHEFFER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **EXPERIAN INFORMATION** | : | |
| **SOLUTIONS, INC., et al.,** | : | **No. 02-7407** |
| **Defendants.** | : | |

<u>**MEMORANDUM AND ORDER**</u>

**Schiller, J.**                                                                                           **October 15, 2003**

      This case reveals the potential problems that accompany the generally salutary effects of fee-shifting statutes.  While fee-shifting provisions are intended to facilitate the pursuit of claims that vindicate both individual rights and the larger public interest, they can be misused when they become a mechanism for obtaining large attorney's fee awards in cases with de minimis returns for the client and society in general.  Furthermore, the prospect of a fee award can skew attorneys' incentives when confronted with settlement offers that would more than compensate their clients, but that fall short of the large fees already incurred.  These concerns are most prevalent in cases such as this, where recovery of private damages, rather than the vindication of constitutional rights, is the primary purpose.  While it is Congress' duty to re-shape fee-shifting provisions to alleviate these concerns, it is this Court's duty to determine a reasonable fee in light of the de minimis victory achieved in this case.  *See Hensley v. Eckert*, 461 U.S. 424, 436 (1983) (holding that "the most critical factor" in the analysis of a reasonable fee is "the degree of success obtained").

## I.      BACKGROUND

After a jury trial before this Court in the above-captioned matter, judgment was entered against Defendant Sears & Roebuck, Inc. ("Sears") in favor of Plaintiff's claims under the Fair Credit Reporting Act ("FCRA").  The jury awarded Plaintiff Richard Sheffer $1,000.00 in actual damages, but declined to award punitive damages.  Now before the Court is Plaintiff's motion for attorneys' fees and costs pursuant to the fee-shifting provision of the FCRA, 15 U.S.C. § 1681o(a)(2), and Federal Rules of Civil Procedure 54(d)(1) and 54(d)(2)(B).  For the reasons that follow, I grant in part and deny in part Plaintiff's motion for attorneys' fees.

## II.     DISCUSSION

Plaintiff seeks an award of $126,543.33 in fees and $14,010.75 in costs, representing the work of the following three firms: Francis & Mailman, P.C., Thomas Lyons & Associates, P.A., and the Consumer Justice Center, P.A.[1]  Defendant Sears contests $54,024.47 of Plaintiff's fee request and $8,495.21 of Plaintiff's cost request. Defendant also broadly challenges the reasonableness of Plaintiff's attorneys' hourly rates and requests an overall two-thirds reduction due to Plaintiff's limited success.

The FCRA provides explicit statutory authority to award costs and counsel fees to a prevailing party "in the case of any successful action to enforce any liability under this section." 15 U.S.C. § 1681o(a)(2) (2003).  Plaintiff, as the prevailing party in this litigation, bears the

---

[1] The fee request is broken down among the firms as follows: Francis & Mailman, P.C., $70,686.00 in fees and $5,188.58 in costs; Thomas Lyons & Associates, P.A., $33,142.33 in fees and $5,128.41 in costs; and the Consumer Justice Center, P.A., $22,715.00 in fees and $3,693.76 in costs.

burden of demonstrating that the fee request is reasonable.  *See Rode v. Dellarciprete*, 892 F.2d 1177, 1183 (3d Cir. 1990).  Courts assess the reasonableness of a claimed fee using the "lodestar" formula, which entails multiplying the number of hours reasonably expended by the appropriate hourly rate. *See Hensley*, 461 U.S. at 433; *Maldonado v. Houstoun*, 256 F.3d 181, 184 (3d Cir. 2001).  Although the lodestar is presumed to yield a reasonable fee, a district court has considerable discretion to adjust the lodestar upward or downward after the opposing party objects to the fee request.  *See Rode*, 892 F.2d at 1183 (citing *Bell v. United Princeton Props.*, 884 F.2d 715, 721 (3d Cir. 1989)).

A.      **Plaintiff's Request for Attorneys' Fees**

1.      **Reasonableness of the Hourly Rate**

A court determines a reasonable hourly rate by assessing the prevailing party's attorneys' experience and skill compared to the market rates in the relevant community for lawyers of reasonably comparable skill, experience, and reputation.  *See Maldonado*, 256 F.3d at 184; *see also Student Pub. Interest Research Group of N.J., Inc. v. AT&T Bell Labs.*, 842 F.2d 1436, 1450 (3d Cir. 1988).  The prevailing party bears the burden of showing that the requested hourly rates are reasonable.  *See Becker v. ARCO Chem. Co.*, 15 F. Supp. 2d 621, 628 (E.D. Pa. 1998) (*citing Washington v. Phila. County Ct. of Com. Pl.*, 89 F.3d 1031, 1036 (3d Cir. 1996)).  The opposing party must then show a sufficient basis to contest the reasonableness of the fees.  *See Orson, Inc. v. Miramax Film Corp.*, 14 F. Supp. 2d 721, 724 (E.D. Pa. 1998).  Once the opposing party's objection is made with the required support, a court has considerable discretion to adjust the fee in light of the objections of the adverse party.  *See Bell*, 884 F.2d at 721.

3

The Third Circuit has held that the attorney's fee schedule composed by Community Legal Services ("CLS") is "a fair reflection of market rates in Philadelphia." *Maldonado*, 256 F.3d at 187. Defendant contests the hourly rates of four of Plaintiff's attorneys because they exceed the prevailing market rates as set by the CLS schedule. The CLS schedule suggests that attorneys with six to ten years of experience should charge hourly rates between $190.00 and $240.00. Mr. Francis and Mr. Mailman, each possessing eight years of experience, have proposed $250.00 hourly rates and Mr. Lyons, Jr., possessing nine years of experience, has proposed a rate of $300.00 per hour. Mr. Soumalis, with four years of experience, has proposed a $200.00 hourly rate, despite the CLS schedule's suggestion that attorneys with two to five years of experience should receive between $160.00 and $180.00 per hour.

In response, Plaintiff has both submitted an affidavit of an experienced consumer protection attorney attesting to the reasonableness of Plaintiff's rates and also cited to several cases in the Eastern District of Pennsylvania that approved Plaintiff's previous fee requests. (Pl.'s Mot. for Att'ys' Fees & Costs App. 1, Ex. B (Goldberg Aff.).) Interestingly, the cases Plaintiff cites for the reasonableness of Mr. Mailman and Mr. Francis' rates affirm hourly rates of $225.00 per hour. (*Id*. at App. 1 (Francis Aff.)) (*citing Bonett v. Educ. Debt Servs., Inc.*, No. 01-65289, slip op. at 8 (E.D. Pa. May 9, 2003) (approving $225.00 per hour for Mr. Mailman and Mr. Francis); *Oslan v. Law Offices of Mitchell N. Kay*, 232 F. Supp. 2d. 436 (E.D. Pa. 2002) (same)). Given their relative experience, the guidelines set in the CLS fee schedule and the rates approved in comparable cases in this district, I find that Mr. Mailman, Mr. Francis and Mr. Lyons Jr. should reasonably receive $235.00 per hour. The $235.00 hourly figure is near the top of the guideline range and represents a slight increase above the hourly rates approved for these

4

attorneys in the two recent cases cited above.  I find that Mr. Soumalis should receive $160.00 per hour based on his experience and skill and because he performed the tasks of a junior associate in this litigation.  Adjusted accordingly, Plaintiff's fee petition totals $106,569.38.  This figure is the starting point for the further reductions enumerated below.

**2.      Reasonableness of Hours Expended**

A prevailing party may request fees for work that is "useful and the type ordinarily necessary to secure the final result obtained." *Commonwealth of Pennsylvania v. Del. Valley Citizens' Council*, 478 U.S. 546, 560-61 (1986) (internal quotation omitted).  The fee petition must be sufficiently specific to allow the court to determine if the hours claimed are unreasonable for the work performed.  *See Washington*, 89 F.3d at 1037; *Dellarciprete*, 892 F.2d at 1190.  A court has "the affirmative function" to "review the time charged, decide whether the hours set out were reasonably expended for each of the particular purposes described and then exclude those that are 'excessive, redundant, or otherwise unnecessary.'" *Maldonado*, 256 F.3d at 184 (quoting *Pub. Interest Research Group v. Windall*, 51 F.3d 1179, 1188 (3d Cir. 1995)).  A court, however, cannot generally reduce hours *sua sponte*, rather, objections must be specific for a court to reduce the amount of fees requested.  *See United States v. Eleven Vehicles*, 200 F.3d 203, 211-12 (3d Cir. 2000).  Of course, this process should not result in a "second major litigation."  *See Hensley*, 461 U.S. at 437.

Defendant Sears contests the reasonableness of Plaintiff's counsel's specific time entries on numerous grounds.  To facilitate the Court's evaluation of each contested time entry, Defendants have submitted a chart that groups Plaintiff's contemporaneous time entries into various categories and includes a column detailing Sears' specific dispute with each entry.

(Def.'s Opp'n to Pl.'s Mot. for Att'ys' Fees & Costs Ex. A.)  Although mindful of the Supreme

Court's admonition that "this process should not result in a second major litigation," this Court

has endeavored to address each of Defendant's numerous disputes.[2]  *Hensley*, 461 U.S. at 437.

### a.       Apportionment of Fees Among All Defendants

At commencement, this action involved four defendants: Experian Information Solutions,

Inc., ("Experian"); Trans Union, LLC, ("Trans Union"); Equifax Information Services, LLC,

("Equifax"); and Sears.   Two defendants, Trans Union and Experian, reached settlement

agreements with the Plaintiff in late May 2003 and on August 7, 2003, respectively.   (Def.'s

Opp'n (Yim Aff.).)   Defendants now claim that certain of Plaintiff's expenditures were not

evenly apportioned among all Defendants remaining in the case at the time of the given

expenditure.[3]   Plaintiff responds that while fees incurred exclusively with respect to litigation

---

[2] For purposes of the attorneys' time records reproduced in this opinion, the following abbreviations apply: TLJ = Thomas Lyons, Jr.; TL = Thomas Lyons; JAF = James Francis; MDM = Mark Mailman; and JG = John Goolsby; JS = John Soumalis; DR = Dania Richardson; PSO = Patti Sullivan; AW = Andrea Weber; and SW = Sue Wolsfeld.

[3] Sears contests the following entries as not evenly apportioned:

| Date | Attorney: Description of Activity | Hours |
|---|---|---|
| 6/4/02 - 9/30/02 | TLJ/JAF/MDM: Complaint drafting and prep. | 16.61 |
| 12/17/02 | JAF: Draft Rule 16 report and revise Rule 26f discovery plan | 1.6 |
| 12/20/02 | JAF: Attend Rule 16 conf., review file and prepare for conf. | 3.6 |
| 5/30/03 | JAF: Prepare Plaintiff for dep. and defend dep. | 9.6 |
| 7/15/03 | JS: Telephone conf w/oppos. counsel re: pretrial disclosure mem., draft pretrial disc. mem. concerning use of special equipment at trial | 1.3 |
| 7/23/03 | JAF: Meet w/client to discuss status | 2.2 |
| 7/24/03 | JS: Telephone conf. w/3d parties re: dep., t/c w/defense counsel re: pretrial obligations, prepare letter re: 3d party subpoenas | 2.6 |
| 7/26/03 | TL: Settlement; in Phila. for pretrial and prepare for trial | 30 |
| 7/29/03 | JAF: Attend final pretrial and settlement conf., prepare and meet with co-counsel | 5.3 |

against other Defendants were eliminated, Sears, as the central Defendant in this case, was appropriately charged for the full amount of the remaining common costs because such costs would have been expended had Sears been the only Defendant.

While I agree that Sears should not bear the full burden of the Plaintiff's common expenditures directed toward numerous Defendants, it is not appropriate to mechanically divide such expenses by the number of Defendants present in the case at each stage of the proceedings. *Cf. Hensley*. 461 U.S. at 435 (suggesting lodestar not be reduced where successful and unsuccessful claims share common core of facts and related legal theories or where counsel's time is dedicated to the litigation as a whole). Realistically, the addition of more defendants increases common costs incrementally. Therefore, given Sears' central role in this case, I think it most appropriate that Sears should bear $15,000.00 of the total $21,904.35 of common expenses identified in footnote 3.[4] This approach takes into account that many of these expenses would have been incurred if Sears had been the only defendant, while relieving Sears of the incremental costs resulting from the presence of additional defendants.[5]

_____

| 7/30/03 | JAF: Prepare for and take dep. of Bank of America rep. | 1.7 |
| 7/30/03 | JS: Prepare for and take dep. of Bank of America rep. | 4.5 |
| 7/31/03 | JAF: T/c w/client re: update on case and trial schedule and prep. | 2.2 |

[4] This results in a reduction of Plaintiff's lodestar by $6,904.35.

[5] Although Sears also contests the following entries on these grounds, these fees will not be apportioned because they clearly indicate fees solely attributable to Sears:

| Date | Attorney: Description of Task | Hours |
|------|-------------------------------|-------|
| 5/14/03 | JAF: Review Sears corresp. re: protective order and deficient discovery responses | 3.2 |
| 5/15/03 | JAF: Review stipulated protective order from Sears and draft corresp. to Sears | 1.2 |
| 5/16/03 | JAF: Review Sears disc. responses and protective order, draft letter to court | 2.4 |

**b.      Overstaffing and Excessive Fees**

Defendants contend that Plaintiff's attorneys' hours should be reduced due to three instances of purported overstaffing.  First, Defendant asserts that it was unnecessary for both Mr. Mailman and Mr. Francis to accrue hours responding to Sears' motion to dismiss and that the total hours expended on this task were excessive.[6]  Sears' motion to dismiss argued that Sears could not be sued under the FCRA as a furnisher of information, an issue that had not previously been addressed in the Third Circuit.  Although other circuits had addressed the issue, it required considerable research by Plaintiff.  In light of the nature and complexity of the arguments raised in Sears' motion to dismiss, I find that these hours were neither excessive nor duplicative.  *See Rodriguez-Hernandez v. Miranda-Velez,* 132 F.3d 848, 860 (1st Cir. 1998) ("Time spent by two attorneys on the same general task is not, however, per se duplicative . . . preparation often requires collaboration and rehearsal.").

Second, Defendants claim that it was unreasonable for both Mr. Francis and Mr. Soumalis to attend the deposition of Equifax's representative, Alicia Fluellen, which they assert could have been handled by Mr. Soumalis alone.  Since Mr. Francis and Mr. Soumalis's combined hours represent an unnecessary duplication of responsibilities, the Court will disallow

| 5/22/03 | JAF: Review Sears responses to discovery and document production | 2.8 |
| 7/17/03 | TLJ: Dep. of Sears | 2.48 |
| 6/2/03 | TLJ: Dep. of Sears | 24 |

[6] Mr. Francis logged a total of 30.7 hours between December 18, 2002 and February 12, 2003, reviewing Sears' motion to dismiss, researching and drafting the response, reviewing Sears' reply and drafting a request to sur-reply.  Mr. Mailman logged a total of 7.1 hours between January 13, 2003 and February 11, 2003, reading Sears' motion to dismiss, drafting, reviewing and revising Plaintiff's response.

8

the fees associated with Mr. Soumalis' mere attendance at the deposition.[7]  Finally, Defendants

contest as duplicative time entries of Mr. Francis and Mr. Soumalis that refer to, *inter alia*,

preparation of the proposed points for charge and verdict form, among other things.[8]  The Court

finds that these hours reflect a reasonable time expenditure for the tasks described and a

permissible degree of collaboration between the senior attorney working on this case and the

junior associate.

In addition, Defendants contest four entries solely on the ground that the time expended

was excessive in light of the work performed.[9]  After review of the entries, I disagree and find

that these entries also reflect a reasonable time expenditure for the tasks described.

### c.      Trial Preparation and Attendance

Defendants ask the Court to decline to award fees related to trial preparation by Mr.

Mailman and Mr. Lyons, Jr. because they did not attend trial and it is unclear from their time

---

[7] Mr. Francis billed a total of 7.3 hours for preparation, travel and time spent deposing Equifax representative Alicia Fluellen.  Mr. Soumalis billed 3.3 hours to "prepare for and attend" the deposition.  Therefore, Mr. Soumalis' hours will be excluded, reducing Plaintiff's lodestar by $528.00.

[8] On July 21, 2003, Mr. Francis billed 2.9 hours to "review Sears' response memo and joinder to motion for summary judgment; draft, edit and revise proposed points for charge, voir dire, and verdict form."  On the same day, Mr. Soumalis billed 2.8 hours to "prepare points for charge, verdict form, telephone calls to defense counsel regarding outstanding depositions."

[9] The following time entries are disputed on these grounds:

| Date | Attorney:  Description of Task | Hours |
|---|---|---|
| 2/28/03 | DNR: Draft discovery requests and send out with certificate of service | 2.7 |
| 3/3/03 | DNR: Create subfiles for Plaintiff's discovery requests sent to Sears, draft enclosure letters to opposing counsel | .5 |
| 4/28/03 | PSO: Prepare notices of deps. and corresp. for same, calendared re: Equifax and Sears | 1 |
| 11/11/02 - 7/1/03 | Internal communications* | 3.2 |

* This represents 12 entries by various individuals.

entries what type of trial preparation they performed.[10]   Furthermore, Defendants argue, Mr. Lyons, Mr. Francis and Mr. Soumalis already billed for the bulk of pretrial preparation, including preparation of the opening and closing statements and the direct examination of witnesses. Plaintiff does not specifically respond to this argument, but generally suggests that the number of attorneys working on his case was reasonable and commensurate with the number of attorneys employed by their opposition.

This Court acknowledges that reasonable trial preparation entails collaboration and rehearsal among attorneys.  *Rodriguez-Hernandez*, 132 F.3d at 860.  However, hours attributed to trial preparation and collaboration by Mr. Lyons, Jr. and Mr. Mailman are excessive and duplicative, especially given the fact that neither appeared at trial and the two highly experienced attorneys who served as lead trial counsel had ample access to each other for collaboration. Furthermore, many of the entries, tersely describing the activity as "trial prep," are not sufficiently specific to allow the Court to determine if the hours claimed are reasonable for the work performed.  *See Rode*, 892 F.2d at 1190 (*citing Pawlak v. Greenawalt*, 713 F.2d 972, 978 (3d Cir. 1983)).  This Court finds that the trial preparation hours billed by Mr. Lyons, Mr. Francis

---

[10] The following entries are contested on these grounds:

| Date | Attorney:  Description of Task | Hours |
|------|-------------------------------|-------|
| 7/24/03 | TLJ: Trial prep and assembly of pretrial statements | 5 |
| 7/25/03 | TLJ: Trial prep–draft pretrial Plaintiff's statement | 2.58 |
| 7/30/03 | MDM: Review court's opinion denying summary judgment, conf. w/ partner re: trial strategy | 2.6 |
| 8/5/03 | MDM: Conf. with JAF  re: trial strategy | 1.2 |
| 8/13/03 | MDM: Trial prep; conf. w/JAF re: same | 1.5 |
| 8/16/03 | TLJ: Trial Prep with co-counsel for Sears cross | 10.42 |
| 8/17/03 | MDM: Trial prep; conf. w/JAF and Plaintiff re: same | .80 |

and Mr. Soumalis, together totaling 117.36 hours,[11] were more than sufficient preparation for a trial that did not even last a full three days. Therefore, the 6.1 hours billed by Mr. Mailman and the 18 hours billed by Mr. Lyons, Jr. – only four hours shy of the total trial preparation billed by lead counsel Mr. Francis – will be deducted.[12]

Furthermore, Defendants object to expenses related to Mr. Soumalis's trial attendance. Plaintiff's counsel's table was amply staffed by Mr. Lyons and Mr. Francis. Mr. Soumalis was not the trial attorney; he did not participate in the examination of any witnesses and did not sit at counsel's table. Rather, Mr. Soumalis served as an actor, reading the deposition testimony of two third-party witnesses who did not attend trial. Therefore, Sears should not be charged for Mr. Soumalis's trial attendance and Mr. Soumalis's acting skills should be compensated at $50.00 per hour, rather than his associate rate of $160.00 per hour.[13]

### d.      Fees Relating to Motion for Summary Judgment

Two of the defendants in this case, Trans Union and Equifax, filed motions for summary judgment on June 26, 2003. On July 18, 2003, Sears filed a two-page joinder to Equifax and Trans Union's motions. Plaintiff has now charged Sears one-half of the fees incurred in filing oppositions to Equifax and Trans Union's motions for summary judgment. Plaintiff filed his opposition briefs, however, on July 11 and July 18, 2003, before having received Sears's joinder.

---

[11] Tom Lyons billed 66.46 hours, Mr. Francis billed 22 hours, and Mr. Soumalis billed 28.9 hours for trial preparation.

[12] This results in a reduction of Plaintiff's lodestar by $5,663.50.

[13] Mr. Soumalis's hours will be reduced by 12.42 hours, which corresponds with the length of trial on August 18 and August 19, 2003. Then, the Court will add $50.00 for the one hour of deposition testimony Mr. Soumalis read into the record at trial. Thus, this adjustment will result in a $1,937.20 reduction in Plaintiff's lodestar.

Furthermore, Mr. Francis's contemporaneous time sheets reveal that he did not review Sears's joinder until July 21 and Plaintiff's response memoranda did not address Sears's joinder or the arguments contained therein.   Therefore, it is inappropriate for Sears to be charged for these expenses.[14]

> **e.     Allocation of Responsibilities Among Partners and Junior Associates**

Sears objects to several of Plaintiff's fees on the ground that certain tasks could have been accomplished more cost effectively by a junior associate.[15]   Although a court must exclude hours that reflect "the wasteful use of highly skilled and highly priced talent for matters *easily* delegable to non-professionals or less experienced associates," delegation is neither always possible in a small firm nor always desirable. *Ursic*, 719 F.2d at 677 (emphasis added).   First, a duty to delegate presupposes that the attorneys charging maximum rates readily have junior associates and supporting paralegals at their disposal.   *See Poston v. Fox*, 577 F. Supp 915, 919-20 (D.N.J. 1984) (finding that it is not always possible to delegate in small office); *see also*

---

[14] This results in a $8,180.86 reduction in Plaintiff's lodestar.

[15] Specifically, Defendants object to the following "associate" level tasks that Mr. Francis performed:

| Date | Attorney: Description of Task | Hours |
|---|---|---|
| 5/28/03 | JAF: Draft, edit, revise response to Sears interrog. and request for production | 4.4 |
| 7/24/03 | JAF: Review Sears' motions in limine, jury inst., verdict form | 3.5 |
| 7/30/03 | JAF: Meet with assoc. to prepare for dep. of Bank of Amer.; prepare questions | 1.7 |
| 8/8/03 | JAF: Review and outline response to Sears Motion in Limine, draft, edit, revise response | 6.4 |
| 8/12/03 | JAF: Review Sears dep. and financial statements | 3.4 |
| 8/5/03 | JAF: Prepare trial binder, meet w/assist re: trial prep assignments, t/c w/co-counsel re: settlement negotiations | 2.8 |

*Roldan v. Phila. Hous. Auth.*, Civ. A. No. 95-6649, 1999 WL 1167658, at *5, 1999 U.S. Dist. LEXIS 19093, at *14-15 (E.D. Pa. Dec. 7, 1999) (holding that reduction in rates is unwarranted in office that is understaffed and where no less experienced attorney was available to perform tasks). Although Plaintiff was represented by attorneys from three different law firms, attorneys in small firms often have limited access to junior associates. (Pl.'s Mot. for Att'ys' Fees & Costs App. 1, Ex. D) (indicating that Francis & Mailman, P.C. consists of two founding partners and two associates in addition to a support staff of paralegals and legal secretaries). Given the number of junior attorneys available to work on this litigation, this Court does not find Plaintiff's attorneys' non-delegation of responsibilities unreasonable. Furthermore, it is reasonable for lead trial counsel to desire to expend his or her own time on some activities that, although within the competency of less highly paid associates, are better performed by the lead counsel to ensure the smooth functioning at trial. Thus, Mr. Francis's assistance in preparing the trial binder and other trial preparations are reasonable given his position as trial counsel. Regardless, these alleged instances of non-delegation are not frequent enough to mandate reducing the number of hours that will be computed in the lodestar. *See Poston*, 577 F. Supp. at 920.

### f.    Clerical Work

Defendant objects to the clerical nature of certain tasks performed by paralegals Sue Wolsfeld, Patti Sullivan, and Dania Richardson, all of which were billed at a $95.00 hourly rate. Clerical tasks should not be billed at senior associate or paralegal rates. *See Missouri v. Jenkins*, 491 U.S. 274, 285-88 (1988) (holding that "purely clerical or secretarial tasks should not be billed at a paralegal rate, regardless of who performs them"); *see also Halderman v. Pennhurst State Sch. & Hosp.*, 49 F.3d 939, 942 (3d Cir. 1995) (holding that it is not appropriate to allow

"the wasteful use of highly skilled and highly priced talent for matters easily delegable to non-professionals").  Plaintiffs offer no explanation for why Sears should pay these fees and do not suggest that they constitute paralegal work.  Since the costs of clerical work, such as filing and copying, are ordinarily considered to be part of an attorney's rate as office overhead, they will not be compensated.[16]  *See Doe v. Ward*, No. 98-1746, 2003 U.S. Dist. LEXIS 16651, at *31, 2003 WL 22187170, at *10 (W.D. Pa. Sept. 16, 2003) (finding that clerical tasks are office overhead and therefore incorporated into attorney's rate.)

### g.    Tasks Described Without Required Specificity

Defendant contests Mr. Goolsby's August 28, 2003 entry for "research" as insufficiently specific.  *See Washington*, 89 F.3d at 1037 (stating that fee petition must be sufficiently specific to allow court to determine if hours claimed are unreasonable for work performed).  In response, Plaintiffs supplement Mr. Goolsby's entry, claiming that the ten hours were spent researching the fee petition.  The Court finds that this is a reasonable amount of time and that the Plaintiff is entitled to recover for time spent preparing a fee application.  *See Hernandez v. Kalinowski*, 146 F.3d 196, 199 (3d Cir. 1998) ("[C]ourts consistently have interpreted fee shifting statutes . . . to provide for reasonable fees . . . related to the preparation and litigation of motions for attorney's fees.").

### h.    Over-billing for Depositions

Sears argues that Mr. Lyons, Jr. over-billed for his attendance at the deposition of Sears' representative, Jai Holtz.  Mr. Lyons, Jr. billed 24.0 hours to "deposition in Chicago - Sears" on June 2, 2003 and an additional 2.48 hours for the continued deposition on July 17, 2003.  Mr.

---

[16] This results in a $1,785.50 reduction in Plaintiff's lodestar.

Lyons, Jr. additionally billed 4.25 hours for "Depo Prep: read and prepare for Holtz final deposition - review new manual" on July 17, 2003.  The June 3 deposition lasted 4.83 hours and the July 17 deposition lasted 2.5 hours.[17]  Plaintiffs suggest that the 24 hour figure, inclusive of preparation, total deposition time, travel to and from Chicago, summarization of the deposition and outlining the follow-up deposition, was reasonable under the circumstances.  Accounting for Mr. Lyons, Jr.'s three hour round-trip air travel for the June 2 deposition, Plaintiff's request suggests that Mr. Lyons, Jr. spent 16.0 hours preparing for the deposition, summarizing it and outlining the follow-up deposition.  Despite the importance of the Sears deposition to Plaintiff's case, 16.0 hours is excessive, especially given that Mr. Lyons, Jr. spent an additional 4.25 hours of preparation time prior to the July 17 deposition.  Thus, Mr. Lyons, Jr.'s June 2 entry will be reduced to 12.0 hours, which, in conjunction with the July 17 entry, allows a total of 4 hours for preparation for the July 2 deposition and 4.25 hours for summarizing the June 2 deposition and preparing for the July 17 deposition.[18]  This figure is reasonable in light of the fact that Mr. Francis billed 2.4 hours in preparation for the comparable deposition of the Equifax representative.

The reductions in attorneys' fees enumerated above reduce the lodestar amount to $78,749.97.

_____

[17]*See* Def.'s Opp'n Ex. E (Holtz Dep. Tr. (indicating that June 3, 2003 deposition began at 9:30 a.m. and ended at 2:30 p.m.)).  The July 17, 2003 deposition transcript indicates that the deposition began at 10:23 a.m. but does not indicate an ending time.  Both parties agree the July 17 deposition lasted approximately 2.5 hours.

[18]This results in a $2,820.00 reduction in Plaintiff's lodestar.

### B.       Reduction for Lack of Success

After determining the lodestar, a court's duty in determining a reasonable fee award is not completed.  The Supreme Court has cautioned that if "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount."  *Hensley*, 461 U.S. at 436.  In measuring the level of success a plaintiff has achieved, the district court may consider the amount of damages awarded compared to the amount of damages requested.  *Farrar v. Hobby*, 506 U.S. 103, 114 (1992) (*quoting Riverside v. Rivera*, 477 U.S. 561 (1986) (Powell, J., concurring in judgment) ("Where recovery of private damages is the purpose of . . . civil rights litigation, a district court, in fixing fees, is obligated to give primary consideration to the amount of damages awarded as compared to the amount sought.")); *see also, Hensley*, 461 U.S. at 436 (stating that "the most critical factor" in determining reasonableness of fee award "is the degree of success obtained"); *Washington*, 89 F.3d at 1042.  "Such a comparison promotes the court's 'central' responsibility to 'make the assessment of what is a reasonable fee under the circumstances of the case.'"  *Farrar*, 506 U.S. at 114-15 (*quoting Blanchard v. Bergeron*, 489 U.S. 87, 96 (1989)).  It should be noted that this assessment is distinct from a proportionality analysis between the amount of damages awarded and the amount of counsel fees requested, which is an impermissible basis upon which to reduce a fee award.  *See Washington*, 89 F.3d at 1042 ("[T]he reason why the damage amount is relevant is not because of some ratio that the court ought to maintain between damages and counsel fees.  Rather, the reason has to do with the settled principle . . . that counsel fees should only be awarded to the extent that the litigant was successful.").

In making a downward adjustment for partial success, "the district court may attempt to identify specific hours that should be eliminated, or it may simply reduce the award to account for the limited success." *Hensley*, 461 U.S. at 436-37. The Supreme Court has rejected "a mathematical approach comparing the total number of issues in the case with those actually prevailed upon." *Id.* at 435 n.11. Courts in this circuit have taken a wide array of approaches to the reduction of attorneys fees for lack of success. *See, e.g., Washington,* 89 F.3d at 1043 (finding that reduction of attorney's fees by fifty percent was appropriate where plaintiff requested more than $750,000.00 in damages and the jury awarded "nominal victory of $25,000.00"); *Hall v. Am. Honda Motor Co.*, Civ. A. No. 96-8103, 1997 WL 732458, at *4, 1997 U.S. Dist. LEXIS 18544, at *11 (E.D. Pa. Nov. 24, 1997) (reducing award by ten percent where plaintiff sought damages in excess of $50,000.00 and received final judgment of $4,000.00); *Hilferty v. Chevrolet Motor Div. of Gen. Motors Corp.*, Civ. A. No. 95-5324, 1996 WL 287276, at *6-7, 1996 U.S. Dist. LEXIS 7388, at *24-25 (E.D. Pa. May 30, 1996) (reducing fee award by approximately two-thirds where plaintiff recovered only eight percent of damages sought), *aff'd*, 116 F.3d 468 (3d Cir. 1997).

In the instant case, Plaintiff sought $300,000.00 in damages, comprised of a $50,000.00 claim for actual damages, arising out of purported credit denials and emotional distress, and $250,000.00 for statutory and punitive damages. (Compl. at ¶ 136(d)-(e)). Despite Plaintiff's request, the jury awarded the nominal amount of $1,000.00. Although this Court cannot be certain of the basis for the $1,000.00 award, the only testimony at trial specifically assigning a monetary value to any of Mr. Sheffer's purported damages consisted of testimony regarding a $1,000.00 retainer that Mr. Sheffer paid to Mr. Lyons' law firm. Thus, it appears that the award,

17

rather than indicating the jury's valuation of Mr. Sheffer's compensatory damages, was in fact designed to reimburse Mr. Sheffer for his out-of-pocket expenses associated with this lawsuit. Furthermore, the $1,000.00 judgment Mr. Sheffer derived from this lawsuit is significantly less than the $30,000.00 amount Sears' offered in settlement.  (Def.'s Opp'n (Colman Aff. ¶ 9).)  It would be inappropriate and unreasonable to award Plaintiff for such a modest result by granting the fees Plaintiff seeks.  *See Farrar*, 506 U.S. at 115 (stating that fee shifting statutes were never intended to "produce windfalls to attorneys") (*quoting Riverside v. Rivera*, 477 U.S. 561, 580 (1986)).  Given Plaintiff's limited success in this lawsuit, this Court finds that $25,000.00 is reasonable compensation.

## C.    Plaintiff's Request for Costs

Section 1681o(a)(2) also authorizes an award of costs to the prevailing party and Plaintiff, in his petition, seeks to recover a wide array of expenses.  15 U.S.C. § 1681o(a)(2) (2003). Although Section 1681o(a)(2) does not expressly set forth the type of costs that may be recovered, a federal statute, 28 U.S.C. § 1920 (2003), provides guidance in this regard.  The following costs are recoverable under § 1920: (1) Fees of the clerk and marshal; (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and copies of papers necessarily obtained for use in the case; (5) Docket fees under 28 U.S.C. § 1923; (6) Compensation of court appointed experts, and costs of special interpretation services under 28 U.S.C. § 1828.  28 U.S.C. § 1920 (2003).

Plaintiff requests $14,010.75 in costs.  Defendant Sears challenges several of these charges and Plaintiff has failed to respond to these challenges.  First, Sears challenges $352.17

for courier, mail, telephone, telex and fax costs.  Because these costs are not enumerated in §

1920 and the Third Circuit has expressly rejected the assessment of costs for postage and courier

fees, the Court will disallow these costs.  *In re Penn Cent. Transp. Co.*, 630 F.2d 183, 191 (3d

Cir. 1980).  Second, Sears challenges $5,147.42 consisting of Plaintiff's counsel's parking and

travel costs.  The Court rejects these costs as well, because although "28 U.S.C. § 1920 is silent

with respect to attorney's travel expenses, postage, and parking . . . courts in this district have

historically rejected taxation of costs of this nature."  *Polcino v. City of Philadelphia*, No. 89-

4672, 1991 U.S. Dist. LEXIS 8995, at *7, 1991 WL 124592, at *2 (E.D. Pa. July 3, 1991)

("Presumably, these expenses are subsumed within the overhead allowance included in the

attorney's hourly fee and, therefore plaintiff may not recover . . . travel, parking and postage

expense.") (internal citation omitted).  Third, Sears objects to $113.75 described as "Westlaw

Research."  Costs for access to computer-based legal research are not statutorily authorized and

are presumably included in overhead and subsumed within Plaintiff's hourly fee.  Therefore, the

Court will not award such costs.  Fourth, Sears contests an $80.00 assessment for Plaintiff's pro

hac vice fees.  These fees are an "expense of counsel for the privilege of practicing law in this

Court" and, as such, are "not normally charged to a fee-paying client . . . and are not recoverable"

under § 1920.  *Romero v. United States*, 865 F. Supp. 585, 594 (E.D. Mo. 1994) (internal

citations omitted.)  Fifth, Sears challenges a charge of $122.92 for office supplies used at trial,

such as "binders" and "indexes," and a $2,353.20 rental fee for the projector utilized by both

parties at trial.  The Court finds that office supplies are part of overhead, and that the cost of such

supplies is adequately reflected in the hourly rate charged by an attorneys.  *Becker v. Arco Chem.

Co.*, 15 F. Supp. 2d 621, 635 (E.D. Pa. 1998).  Therefore, the cost of office supplies is not

recoverable.  With respect to the projector rental fee, Plaintiffs submit that Sears agreed to share half of the projection equipment at trial.  (Pl.'s Mot. for Att'ys' Fees & Costs App. 1, Ex. E.) Since Sears did not address Plaintiff's contention and because Sears attempted to utilize this equipment at trial, albeit unsuccessfully, the Court finds that Sears should bear half of the cost.

Finally, Sears disputes the apportionment of deposition costs.  Plaintiff charged Sears for half of the deposition costs of two third-party witnesses, Sally McCormack and Martha Koehler, and the full deposition costs for Sears' witness, Jai Holtz.  Sears contends that these costs should be divided by the three defendants who participated in these depositions, namely, Equifax, Sears and Trans Union.  Furthermore, Sears contests the fact that it was charged the full costs associated with the deposition of Plaintiff, in which the aforementioned three defendants participated.  These costs are minimal and will be split evenly among the Defendants.  Thus, Sears' costs for deposition transcripts will be reduced from $1,434.81 to $839.01.[19]

Therefore, the overall costs are reduced to $7,588.66.

## IV.    CONCLUSION

In sum, the revised hourly rate reduced Plaintiff's lodestar to $106,569.38 and the subsequent reductions detailed in Part II.A.2 resulted in an adjusted lodestar amount of $78,749.97.  This amount was further reduced to $25,000.00 to account for the de minimis level of success achieved by Plaintiff's attorneys.  Therefore, I conclude that Plaintiff, as the prevailing

---

[19] The aforementioned revisions to Plaintiff's request for costs result in an overall deduction of $6,422.09.

party, is entitled to attorneys' fees in the amount of $25,000.00 and costs in the amount of $7,588.66.  An appropriate Order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **RICHARD L. SHEFFER,** | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **EXPERIAN INFORMATION** | : | |
| **SOLUTIONS, INC., et al.,** | : | **No. 02-7407** |
| **Defendants.** | : | |

## ORDER

**AND NOW**, this **15ᵗʰ** day of **October, 2003**, upon consideration of Plaintiff's Motion for Attorneys' Fees and Costs, Defendant's response thereto, and Plaintiff's reply, it is hereby **ORDERED** that:

Plaintiff's Motion for Counsel Fees and Costs (Document No. 78) is **GRANTED in part** and **DENIED in part** as follows:

Plaintiff is hereby awarded and Defendant is hereby ordered to pay Plaintiff the sum of $25,000.00 in attorneys' fees and $7,588.66 in costs.

**BY THE COURT:**

_____
**Berle M. Schiller, J.**